**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

                **Case No. 24-cr-456**

     **v.**

**RONALD HUNT,**

        **Defendant.**

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR VIOLATIONS OF THE MARITIAL PRIVILEGE OR SUPPRESSION OF EVIDENCE**

Defendant Ronald Hunt, by and through undersigned counsel, pursuant to the Fifth and Sixth Amendments to the United States Constitution, respectfully moves this Court to dismiss the Indictment in this matter and all charges against Mr. Hunt based on the government's improper access and review of confidential marital communications. The government's flagrant conduct in obtaining and using privileged communications warrants the remedy of dismissal. The government knew Mr. Hunt was married and the identity of his wife. The government saw it fit to take on the role of the judiciary and unilaterally determine that the crime fraud exception entitled it to listen to confidential and privileged communications between Mr. Hunt and his wife. The government did not implement a filter team or seek an order from the Court allowing it to review the privileged communications. The government then used the privileged communications to conduct its investigation and seek an extension of the Title III wiretap authorization. Dismissal is warranted in the face of such flagrant conduct. In the alternative, Mr. Hunt moves to suppress all evidence obtained from the Title III wiretaps or that contains or is derived from his privileged conversations with his wife.

## **Procedural History**

Defendant Ronald Hunt and others are charged by Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, Cocaine Base, Cocaine, and other controlled substances in violation of Title 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(D).  Mr. Hunt is also charged with Distribution of a Controlled Substance and Using, Carrying, and Possessing a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c).  The Indictment was returned on October 10, 2024 ,and Mr. Hunt was arrested on October 16, 2024.  An initial appearance was held on October 16, 2024, and the government's motion for temporary detention was granted.  A detention hearing was held on October 21, 2024. Mr. Hunt sought pretrial release, with his wife, Lakeiya Hunt, to serve as a third-party custodian. The Court granted the government's request for pretrial detention. Mr. Hunt is detained at the DC Jail Central Detention Facility.  A motions hearing is scheduled for March 6, 2026.  No trial date is set.

## **Government's Investigation**

In December 2023, a confidential human source (CHS) provided information to law enforcement regarding his source of supply of drugs.  The CHS claims that someone he knew as "Dirt" was selling powder Fentanyl and cocaine.  The CHS provided this information after being stopped by law enforcement for possession of fentanyl.  "Dirt" was alleged to be selling the narcotics in Montgomery County, Maryland, and the District of Columbia.  The CHS alleged that he had been purchasing narcotics from "Dirt" for approximately one year.  The CHS sent text messages to "Dirt" in December 2023 in the presence of law enforcement arranging to buy drugs from "Dirt."  A phone number for "Dirt" was provided by the CHS that law enforcement identified as belonging to Ronald Hunt.  On December 18, 2023, law enforcement sought an

order from the Circuit Court for Montgomery County, Maryland to obtain subscriber information, pen register/trap and trace device, cell site/cell tower location information, GPS pings, and service provider location information for the phone number identified as being associated with Ronald Hunt.

The government alleges that shortly after being provided information from the CHS about "Dirt", law enforcement started making purchases of narcotics directly from Mr. Hunt. The government alleges that the undercover purchases began on or around December 18, 2023. The CHS that initiated the investigation of Mr. Hunt has prior convictions. The CHS admitted to using narcotics and continued to contact Mr. Hunt outside of the presence of law enforcement despite being admonished not to do so. The CHS was not charged based on the cooperation provided in this case.

The government knew at the beginning that privileged material would be implicated during the investigation. The government was aware that Mr. Hunt was married to Lakeiya Hunt. Any communications between them during the course of the marriage are confidential marital communications. During the course of the investigation, the government reviewed communications that it knew would result in the seizure of confidential marital communications. Despite being aware of this situation, the government made no attempt to ensure that privileged communications would not be reviewed. The government could have sought a court order finding the crime fraud exception applied allowing them to review the privileged communications. They did not. They could have implemented a filter team to segregate and review privileged communications. They did not. This cavalier approach should not be condoned by the Court. A severe sanction is required to punish the government and deter similar actions in the future.

On the one hand, the government notified law enforcement of the prohibition of reviewing privileged communications:



Exhibit 1 at P. 9. (Filed Under Seal).  The guidance went further and identified the types of privileges that could be implicated, including marital privilege:



*Id* at 9-10.  The language appears to empower law enforcement officers to make legal determinations, specifically whether the crime fraud exception allows the investigative team to review privileged communications between Mr. Hunt and his wife.  However, language in the same section mandates that law enforcement do the following:



*Id*. at 10.  There was no filter team in place.  Instead, it appears that the investigative team listened to any and all communications between Mr. Hunt and his wife.

The government reviewed privileged communications and mischaracterized communications between Mr. Hunt and his wife to allege a nefarious purpose.  For example, the government intercepted a call between Mr. Hunt and his wife on April 3, 2024 and provided the following summary:

Greeting
Lakeiya is on her way to work calling to say good morning

On the same day, the government reviewed another privileged conversation that was summarized as:

Hunt: Hey baby, you find some speakers for us?
Lakeiya: [UI} when I get up.
Hunt: I know...[UI] at home...
Lakeiya: [UI]
Hunt: [UI] - tinted Malibu... you say what you needed is money though right? Lakeiya: I'm going back to sleep.
Hunt: Alright. Baby?
Marked pertinent bc HUNT references a tinted Malibu.

In another privileged communication between Mr. Hunt and his wife on April 2, 2024, Mr. Hunt asked his wife to send him $200.00.  It appears that he was asking for the money for gambling.

Inexplicitly, the Government alleges that Mr. Hunt asked his wife for $7,200.00. No such request was made. The government inflated the request by $7,000.00 in order to suggest the request was nefarious.

The government did not even attempt to conduct a filter review of the privileged material. Instead, it relied on law enforcement to make legal determinations that can only be made by a member of the judiciary. The use of non-lawyers for privilege review has been criticized and rejected by the United States Court of Appeals for the Third Circuit. *In re Fattah*, 802 F.3d 516, 530 (3d. Cir. 2015) (first level of privilege review should be conducted by an independent DOJ attorney acceptable to the District Court). Here, there is no indication that any privileged communications were withheld and no indication that documents were screened by anyone. The government improperly accessed and reviewed more than 80 confidential communications between Mr. Hunt and his wife. We are not aware of any communications that were identified as privileged and withheld from the prosecution team and investigation team. The use of a filter team in general is improper and may be the basis to dismiss the Indictment. Here, the government tasked non-lawyers with making determinations on privilege. This process is improper and the requested remedy should be imposed to address this serious transgression. Adding to the egregiousness is the government's recklessness, they also intercepted and reviewed communications between Mr. Hunt and a medical provider.

The prosecution team relied on these determinations made by non-lawyers and reviewed privileged and confidential material. Decisions regarding privilege are judicial determinations that cannot be made by a filter team or any other members of the executive branch. The judiciary is the only entity that can make these determinations. *United States v. Under Seal* (*In re Search Warrant Issued June 13, 2019*), 942 F.3d 159 (4th Cir. 2019); *cf. In re Search of Info. Associated*

*with Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, 2022 U.S. Dist. LEXIS 237972, at *3 (D.D.C. Dec. 15, 2022).  The investigative team determined that an exception applied to marital communications between Mr. Hunt and his wife that would allow these materials to be turned over to the prosecution.  We are not aware of any court order sought or obtained by the government to authorize disclosure of the confidential and privileged communications.

<u>**Argument**</u>

The prosecution team's receipt, review, and use of confidential marital communications was an unconstitutional invasion of Mr. Hunt's rights under the Fifth and Sixth Amendments of the United States Constitution.  The government alleges that Mr. Hunt was involved in the distribution of narcotics.  They allege he conducted these activities in an apartment complex in Washington, D.C.  Mr. Hunt's residence was in Maryland.  The government also alleges that others, including Mrs. Hunt, assisted in the distribution of narcotics.   In an attempt to obtain an unfair advantage, the government devised a scheme to obtain confidential marital communications. The prosecution team used this confidential and privileged information to shape and continue their investigation.  They also use the improperly obtained information in opposing Mr. Hunt's request for pretrial release.  We respectfully submit that the only appropriate remedy for the government's conduct in this case is dismissal of the Indictment.

**Marital Privilege**

Communications between spouses are "presumptively confidential" and the privilege "reaches those marital communications made in confidence and intended to be confidential." *United States v. Poole*, 451 Fed. Appx. 298, 307 (4th Cir. 2011) (internal citation and quotation omitted).  However, marital communications that "involve the commission of a crime in which

both spouses are participants [d]o not fall within the marital privilege." *Id*. (citing *United States v. Parker*, 834 F.2d 408, 411 (4th Cir. 1987). This rule and related exception strike a balance "between the public interests in fostering open and honest communications between husband and wife and according a sufficient degree of privacy to marital relationship . . . and the revelation of truth and the attainment of justice, that are also in the public interest." *Parker*, 1987 U.S. App. LEXIS 15758 * 6 (4th Cir. 1987). "The party asserting an evidentiary privilege, such as the marital communications privilege, bears the burden of establishing all of the essential elements involved." *United States v. Acker*, 52 F.3d 509, 514-15 (4th Cir. 1995) (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

**The Use of a Filter Team Is an Improper Delegation of the Judiciary Role**

Even if the government used a filter team to make privilege determinations, it would be improper. This issue was addressed in a 2019 decision from the United States Court of Appeals for the Fourth Circuit. *United States v. Under Seal* (*In re Search Warrant Issued June 13, 2019*), 942 F.3d. 159 (4th Cir. 2019). The Court found that the determination of whether a document or communication is protected by the attorney-client privilege or work product doctrine is a judicial function and must be determined by a Court. *Id*. at 176. The Court held that the trial court erred in delegating and authorizing these judicial functions to the executive branch, specifically the filter team. The delegation of these judicial functions to non-lawyers was also criticized. The proper procedure is to submit material to the Court of a third party to determine whether a privilege applies.

In addition to the improper delegation of the judicial role through the use of taint teams, courts have criticized the filter team process and advocated for third-party review or judicial review. In *United States v. Kaplan,* the court found that the use of a filter team was "of little use

in protecting any privileged materials seized by the government . . . [where] the FBI case agent was given access to review materials from seized files even before it was determined whether or not the crime-fraud exception applied."  2003 U.S. Dist. LEXIS 21825 *34-36 (S.D.N.Y. December 5, 2003).  The Court also noted that allowing a "law enforcement agent involved with the prosecution and investigation of the case to have made determinations about whether or not materials are privileged . . . eviscerates any claim that an 'ethical wall team' within the Government effectively screens the prosecution team from privileged materials." *Id.* at *36-37. Here, the filter team implemented by the government sent confidential marital communications as well as privileged material to the prosecution team.

## The Indictment Should Be Dismissed Because of Violations of Marital Privilege and Misrepresentations About the Content of the Calls

The Court should dismiss the Indictment against Mr. Hunt based on the government's review and use of privileged and confidential communications.  The government was aware that Mr. Hunt was married very early in the investigation. Despite this knowledge, they decided to forego the use of a privilege review altogether.   The government tasked the privilege determination to non-lawyers who were directly involved in the investigation.   They also provided conflicting guidance.  This resulted in the investigators improperly making judicial determinations about confidentiality and privilege and passing confidential and privileged information to the prosecution team.  These communications were used by the prosecution team in developing the case against Mr. Hunt and relied upon in seeking an extension of the Title III.

The government should have segregated any potentially privileged communications and submitted them to the Court for a determination of privilege.  It was apparent to them that the communications they obtained were confidential marital communications.   Despite this

knowledge, their colleagues made these privilege determinations.  The privileged material was used by the investigative team and relied upon in seeking a renewal of the wiretap.

The government may seek to rely on an argument that the marital privilege is overcome by the crime-fraud exception.  However, this is a judicial determination that cannot be made unilaterally by a filter lawyer.  The marital privilege is not absolute and can be overcome.  For example, privilege does not apply "if the spouses are jointly participating in a crime.  *United States v. Cooper*, 85 F. Supp. 2d 1, 30 (D.D.C. 2000).  If the government sought to make this argument it was required to bring the issue to the Court.  The proper process and procedure are identified in *United States v. Blaine*, where the government filed a motion to determine the applicability of the joint crime exception to the spousal communications privilege.  2012 U.S. Dist. LEXIS 137975 (E.D.N.C. September 25, 2012).

The severe sanction of dismissal of the Indictment is justified due to the government's intentional acts to obtain marital communications.  Dismissal of an indictment "is justified in order to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, to 'help translate the assurances of the United States Attorneys into consistent performances by their assistants.'"  *United States v. Lawson*, 502 F.Supp. 158, 169 (D. Md. 1980) (citing and quoting *United States v. Fields*, 592 F.2d 638, 647 (2d. Cir. 1978).  The government knew its investigative tools would yield confidential and privileged material.  They avoided scrutiny by tasking law enforcement with making judicial determinations in order to condone their use of confidential and privileged communications.

The Court must also hold a hearing to determine the extent to which confidential marital communications and privileged communications have infiltrated the prosecution team.  Based on

the nature and extent of the breaches of privilege, in the event the Court does not dismiss the indictment or suppress the material, the prosecution team may need to be disqualified and replaced. However, additional information is required before such a determination can be made.

**Suppression of Evidence**

In the alternative, if the Court declines to dismiss the Indictment, all communications obtained through the wiretap should be suppressed.  Given the length of time the prosecution team had the material and their use of it in conducting further investigation, interviewing witnesses, and bringing the Indictment, dismissal of the Indictment and all charges is the appropriate remedy. The harm caused cannot be undone through a subsequent filter review by the Court of a third party.

**Conclusion**

The actions of the government in this case, including the improper receipt, review, and use of confidential marital communications support his request for dismissal of the Indictment.  The breach of these bedrock principles without court approval requires the drastic relief requested.  The government investigation and prosecution are tainted as a result of the prosecution team's access to and use of these improperly obtained documents.  In the alternative, if the Court declines to dismiss the Indictment, Mr. Hunt seeks suppression of the confidential and privileged material produced to the prosecution team and disqualification and replacement of any team members that have been exposed to the confidential and privileged materials.

Respectfully Submitted,

*Marc Eisenstein*

Marc Eisenstein
Coburn & Eisenstein PLLC
1200 G Street NW
8th Floor
Washington, DC 20005
Phone: (703) 963-7164
Fax: (866) 561-9712
marc@coburngreenbaum.com

*Counsel to Defendant Ronald Hunt*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 30, 2026, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all counsel of record.

_____/s/_____

Marc Eisenstein